❏ Original     ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched* )<br>*or identify the person by name and address)* )<br>Inventory number #1B310 and #1B311, )<br>referred to as the "Devices", as further )<br>described in Attachment A )| Case No.   23-953M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

       An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the     Eastern     District of     Wisconsin
*(identify the person or describe the property to be searched and give its location):*

    See Attachment A.

       I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

    See Attachment B.

       **YOU ARE COMMANDED** to execute this warrant on or before    7/27/2023    *(not to exceed 14 days)*
   ❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

       Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

       The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Hon. Nancy Joseph   .
                                                      *(United States Magistrate Judge)*

       ❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
   ❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____.

Date and time issued:    7/13/2023 @ 4:59 p.m.                  *Judge's signature*

City and state:    Milwaukee, WI                      Honorable Nancy Joseph, U.S. Magistrate Judge
                                                          *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

1.      The property to be searched are a black Apple iPhone cellular phone IMEI: 352834615819790, and a purple Apple iPhone 14 with a clear protective case cellular phone with an unknown IMEI, seized from Williams on May 10, 2023, and maintained on inventory number #1B310 and #1B311 in FBI case number 281D-MW-3335766, hereinafter referred to as the "Devices."  The Devices are currently located in evidence at Federal Bureau of Investigation Milwaukee Division, 3600 S. Lake Dr, St. Francis, Wisconsin.  This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment                                                                                              B.

1

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations of mail fraud conspiracy, in violation of 18 U.S.C. § 1349, mail fraud, in violation of 18 U.S.C. § 1341 and felon in possession of a firearm or ammunition, in violation of 18 U.S.C. § 922(g)(1), including but not limited to:

   a.   types, amounts, and prices of firearms, ammunition, or firearm accessories as well as  dates, places, and amounts of specific transactions;

   b.   any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information);

   c.   all bank records, checks, credit card bills, account information, and other financial records;

   d.   communications between Jalen Williams and fraud victims/ co-conspirators;

   e.   electronic telephone books, address books, telephone bills, photographs, letters, personal notes, e-mails, documents, and other items or lists reflecting names, addresses, telephone numbers, addresses, and any communications regarding illegal activities among and between members and associates involved in fraudulent activities or the transfer/possession of firearms or ammunition;

   f.   Photographs, videotapes or other depictions of assets, co-conspirators, firearms, or other activities related to possession of firearms or ammunition or fraud; and

   g.   Records of Internet Protocol addresses used; records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user typed web addresses.

2.      Evidence of user attribution showing who used or owned the Subject Devices at the time the things described in this warrant were created, edited, or deleted,

1

such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

a. records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Inventory number #1B310 and #1B311, referred to as<br>the "Devices", as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)    Case No.    23-953M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1349; 1341; & 922(g)(1) | Mail fraud conspiracy; Mail fraud; and Felon in possession of a firearm/ammunition. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jacob Dettmering, FBI SA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: 7/13/2023

_____
*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
_____
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Jacob Dettmering, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 7, 2018.  I was assigned to the FBI Capitol Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana from June 15, 2018, to April 1, 2020.  Since April 1, 2020, I have been assigned as the Task Force Coordinator for the Milwaukee Area Safe Streets Task Force (MASSTF).  Since 2018, I have investigated violations of Federal law, directed drug and street gang investigations, obtained and executed search and arrest warrants related to the distribution of illegal narcotics, and debriefed confidential informants and cooperating defendants.  I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.  I am aware, based on my training and experience as a law enforcement officer, that cellular phones can be used to store information, including text messages,

multimedia messages, photographs, video, a history of incoming and outgoing calls, contact/address book information, and other data. I am further aware, based on training and experience, that individuals use cell phones to facilitate drug sales and distribution, by, for example, placing and receiving phone calls, and sending and receiving text messages, images, and videos.

3.      This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

4.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

5.      The property to be searched are a black Apple iPhone cellular phone IMEI: 352834615819790, and a purple Apple iPhone 14 with a clear protective case cellular phone with an unknown IMEI, seized from the residence located at 2200 N Sam Houston Parkway East, Apt 1201, Houston, TX 77032, the location where Jalen Williams was arrested on May 10, 2023, and maintained on inventory number #1B310 and #1B311 in

2

FBI case number 281D-MW-3335766, hereinafter referred to as the "Devices." The Devices are currently located in evidence at Federal Bureau of Investigation Milwaukee Division, 3600 S. Lake Dr, St. Francis, Wisconsin.

6.     The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7.     Since February 2021, the ATF, Milwaukee Police Department (MPD), Federal Bureau of Investigation (FBI), and Drug Enforcement Administration (DEA) have been investigating identified members of the "Wild 100's", a violent street gang in Milwaukee, Wisconsin, also known as the "Shark Gang", including Jalen Williams, DOB 10/30/1999, among others, for federal firearms offenses, bank fraud, and federal program fraud.

8.     Williams has emerged as a suspect based upon his connections to the "Wild 100" street gang. Williams has been identified as a Wild 100 member via multiple Milwaukee Police Department ("MPD") reports, multiple sources of information, and an ATF confidential source. Agents have additionally observed Williams photographed with several previously identified Wild 100 members. These individuals exclusively claim affiliation with the gang and do not represent other entities in Milwaukee. Agents quickly learned Williams splits his time between Wisconsin, Georgia, and Texas.

3

Additionally, Williams has allegedly been engaged in multiple instances fraud. In fact, Williams has been observed on his own publicly viewable social media profiles (Instagram: "ATO_AXION") posting several pictures of large amounts of cash, guns, diamonds, jewelry, and other items of value.

9. On or about March 14, 2022, Special Agents (SA) received information that Williams was in Milwaukee but leaving Milwaukee on March 15, 2022, at 8:00 a.m. on United Airlines flight 5599 travelling to Houston, Texas.

10. On or about March 15, 2022, Investigators of the FBI arrested Jalen D. Williams, date of birth October 30, 1999, while attempting to board a plane at General Mitchell International Airport in Milwaukee, Wisconsin. He confirmed his identity as Jalen Williams. Incident to arrest, agents searched Williams and found a fraudulent driver's license purportedly issued by the State of Washington under the name "Samuel James", date of birth September 30, 1997.

11. Williams was charged by federal complaint on March 17, 2022, for Making False Statements in Connection with the Attempted Acquisition of a Firearm, in violation of 18 U.S.C. § 922(a)(6). See case no. 22-MJ-43-WED.

12. On the same day, Williams made his initial appearance in the Eastern District of Wisconsin before the Honorable Magistrate Judge Duffin. At the hearing, Magistrate Judge Duffin granted the United States' a request for additional time to prepare for the detention hearing, and ordered the detention hearing to be held the next day, on Friday, March 18, 2022 at 3:00 p.m. In the interim, Magistrate Judge Duffin

4

ordered Williams released on the condition that he wear a GPS monitoring bracelet, maintain a curfew between 9 p.m. and 6 a.m., that he not have any contact with any known gang members, and that he appear at 3:00 p.m. on March 18, 2022. Williams was released from the Court, and U.S. Probation Officers ensured that a GPS bracelet was affixed.

13. At approximately 8:00 p.m. on March 17, 2022, the monitoring company was notified that the bracelet was cut off of Williams in the area of 51st Street and Capitol Drive in the City of Milwaukee, Eastern District of Wisconsin. The United States Marshals Service subsequently issued a Federal Arrest Warrant for Williams on March 18, 2022.

14. On March 18, 2022, a detention hearing was called as ordered, but was not held because Williams failed to appear. See case no. 22-MJ-43-WED, doc. 7 (minutes of bond hearing).

15. On March 22, 2022, a grand jury for the Eastern District of Wisconsin Indicted Williams with one count of Making a False Statement in connection with the attempted purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6) and 924(a)(2), and one count of failure to appear, in violation of 18 U.S.C. § 3146(a)(1), in United States v. Jalen Williams, aka "Samuel James," 22-CR-69-LA.

16. On or about July 29, 2022, Special Agents and TFO's of the FBI's Kansas City Violent Crimes Task force located and arrested Williams in Kansas City, Missouri pursuant to the Federal arrest warrant. Williams' vehicle was traffic stopped and he

5

immediately fled on foot to elude officers.  During the arrest, Investigators recovered two (2) firearms.

17.     On or about December 15, 2022, Williams was sentenced in case number 22-CR-69-LA to time served with 4-months of home confinement and 2 years supervised release.  Investigators initiated 24-hour electronic surveillance on Williams at his listed residence, 9575 W Fond Du Lac Avenue, Milwaukee, WI.  Investigators witnessed Williams at the residence during the period of home confinement.  Williams was seen going on the balcony on several occasions until the date his home confinement was over, and he was able to take of his GPS bracelet.  Following Williams GPS bracelet coming off on or about April 14, 2023, investigators never saw Williams at the residence again.

18.     On or about April 25, 2023, a grand jury for the Eastern District of Wisconsin returned a sealed indictment charging Williams with mail fraud conspiracy, in violation of 18 U.S.C. § 1349, mail fraud, in violation of 18 U.S.C. § 1341 and conspiracy to commit acts against the U.S., in violation of 18 U.S.C. § 371, in *United States v. Ronnell Bowman, et al*, 23-CR-77.  A federal arrest warrant was issued.

19.     On or about April 28, 2023, a search warrant was issued in the Eastern District of Wisconsin by the Honorable Magistrate Judge Nancy Joseph, for the prospective GPS location of the cellular telephone with phone number 414-712-2768, which was the cell phone investigators knew belonged to Williams.

20.     On or about April 29, 2023, the device was showing its location in Atlanta, Georgia.  It should be noted that the conditions of Williams' supervised release stated,

"[t]he defendant must not knowingly leave the federal judicial district without first getting permission from the Court or probation officer." Williams had not received permission from the Court or his supervising probation officer to leave the Eastern District of Wisconsin.

21.     On or about April 30, 2023, Williams' cell phone was showing its location in Houston, Texas. Immediately following, on May 1, 2023, Williams' phone's location was in Dallas, Texas. Additionally, Williams posted a picture to his Instagram account, "__axion", which showed Williams in a kitchen of a newer residence. Williams was posing with a large stack of currency (likely over $10,000). A screenshot is set forth below.



22.     On or about May 6, 2023, Williams' cell phone location was in Houston, Texas. The GPS location information for Williams' cell phone was in a very tight radius

7

near 2200 N Sam Houston Parkway East. Investigators knew that a female companion of Williams, Ivanna Cassell, resided at 2200 N Sam Houston Parkway East, Apt 1201, Houston, TX 77032. A screenshot is set forth below.



23.     On or about May 9, 2023, investigators conducted physical surveillance of 2200 N Sam Houston Parkway East, Apt 1201, Houston, TX 77032. At approximately 6:44pm, Investigators witnessed Williams with who they believed to be Cassell, exit her vehicle and walk towards apartment 1201. A screenshot is set forth below.

Case 2:23-mj-00953-NJ   Filed 07/13/23   Page 14 of 25   Document 1



24.     On or about May 10, 2023, FBI Houston SWAT executed an arrest warrant for Williams at 2200 N Sam Houston Parkway East, Apt 1201, Houston, TX 77032.  The FBI knocked and announced their presence repeatedly with no compliance from Williams.  Eventually SWAT forced entry to the residence and took Williams into custody inside the residence.

25.     Cassell signed a consent to search form which allowed investigators to search the entire residence.  TFO Klarkowski located inside of a purse located on the couch in the living room was a pink Ruger LCP Max .380 auto handgun (Serial #380975867) loaded with seven (7) rounds in the magazine, and no round in the chamber.

9

TFO Klarkowski located on the kitchen counter was a box of Federal .380 auto ammunition (50 count) containing forty-one (41) unspent rounds of ammunition. This box of ammunition was located on top of a white Ruger gun box that was empty but contained accessories. TFO Sgt Anderer conducted a search of Williams and Cassell's bedroom, where she later located a purple Apple iPhone with clear case and a black Apple iPhone with no case and cracked screen located under the mattress. MPD Sgt Anderer conducted a search of the closet of Williams and Cassell's bedroom, where she later located identifiers for Williams to include his Wisconsin Driver's License and Debit Card.

26.     TFO Veloz assisted with a search of the closet and located numerous fraudulent related documents to include two (2) checks made out to "Jacobi Lee, 18714 Woodbreeze Dr, Humble, TX 77346" in the amount of $12,949.43. It should be noted that these checks had the same individual, address, account & routing numbers, and had the same check number on both checks. However, both checks appeared to be printed on different types of check paper.

27.     When Cassell was asked about who "Jacobi Lee" was, she stated that she did not know who that was and had never heard of that person before. TFO Veloz located receipts to Bank of America and Navy Federal Credit Union inside the closet. On the Bank of America receipt, it shows that a check of $21,592.10 that was deposited. On the Navy Federal Credit Union receipt, it shows that an amount of $12,949.43 was deposited into an account.

10

28.     TFO Veloz located appraisal forms addressed to Jalen Williams for custom jewelry from Johnny Dang and Co. located in Houston, TX. The first appraisal form was for a 10k two tone white gold base Yellow gold top layer name pendant valued at $25,327. The name on the pendant was "Axion", which officers know to be an alias for Williams, as he commonly uses that alias for his rap music. The second appraisal form was for a custom diamond/white gold permanent grill for Williams' teeth, which was valued at $30,000.

29.     TFO Veloz located a form through Chase Bank addressed to Brenda De Leon. The form appeared to be a notice from Chase Bank stating that checks previously deposited into this account were going to be returned. The deposit amount on this form related to this account was valued at $145,500. The reason as to why Chase Bank was not going to allow the deposit to go through was as follows "Altered/Fictitious. The date, payee, amount or signature appears to have been altered." When asked by officers on scene what this form was about, De Leon had no answer as to what it was for. However, Cassell stated on behalf of her sister that it was due to checks that they attempted to deposit but they were returned, and that the form was sent to them through FedEx in the mail.

30.     Williams' phones were placed into FBI property as evidence items 1B310 and 1B311. 1B310 had an assigned IMEI of 352834615819790, and 1B311 which was an iPhone 14 maintains an internal sim card, thus investigators are unable to determine an

11

IMEI until an exam is completed. Williams' phones were placed into evidence in Houston, Texas and were not received by investigators in this district until July of 2023.

## TECHNICAL TERMS

31. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers and devices on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

12

c.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

d.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

e.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play

13

audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

g. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

32.     Based on my training, experience, knowledge and research, I know that the Devices may have the capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training, experience, knowledge, and research, I have learned that examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

33.     Based on my knowledge, training, and experience, I know that electronic devices, like the Devices at issue here, can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some

14

period of time on the device. This information can sometimes be recovered with forensics tools.

34. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the devices. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

15

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

35. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

36. *Manner of execution.* Because this warrant seeks only permission to examine Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

<u>CONCLUSION</u>

37. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

16

## ATTACHMENT A

1.     The property to be searched are a black Apple iPhone cellular phone IMEI: 352834615819790, and a purple Apple iPhone 14 with a clear protective case cellular phone with an unknown IMEI, seized from Williams on May 10, 2023, and maintained on inventory number #1B310 and #1B311 in FBI case number 281D-MW-3335766, hereinafter referred to as the "Devices." The Devices are currently located in evidence at Federal Bureau of Investigation Milwaukee Division, 3600 S. Lake Dr, St. Francis, Wisconsin. This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.     All records on the Devices described in Attachment A that relate to violations of mail fraud conspiracy, in violation of 18 U.S.C. § 1349, mail fraud, in violation of 18 U.S.C. § 1341 and felon in possession of a firearm or ammunition, in violation of 18 U.S.C. § 922(g)(1), including but not limited to:

    a.  types, amounts, and prices of firearms, ammunition, or firearm accessories as well as dates, places, and amounts of specific transactions;

    b.  any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information);

    c.  all bank records, checks, credit card bills, account information, and other financial records;

    d.  communications between Jalen Williams and fraud victims/ co-conspirators;

    e.  electronic telephone books, address books, telephone bills, photographs, letters, personal notes, e-mails, documents, and other items or lists reflecting names, addresses, telephone numbers, addresses, and any communications regarding illegal activities among and between members and associates involved in fraudulent activities or the transfer/possession of firearms or ammunition;

    f.  Photographs, videotapes or other depictions of assets, co-conspirators, firearms, or other activities related to possession of firearms or ammunition or fraud; and

    g.  Records of Internet Protocol addresses used; records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user typed web addresses.

2. Evidence of user attribution showing who used or owned the Subject Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.